May it please the Court, Your Honors, Roger Courteau for Daisy Trust, the appellant. You may proceed. Thank you, Your Honor. Your Honor, this is a, Your Honors, this is a novel case. And novel in the sense that there is very little, if any, Nevada case law of a published nature on the issue of the application of 106-240, NRS 106-240, that acts as a statute of repose, not a statute of limitations. As it relates to whether or not and how the operation works for the extinguishment of a lien that has been accelerated for more than 10 years. And I think we have to start with the statute. There's the Glass decision with the Nevada Supreme Court that was decided last year. The Glass decision is interesting. And it's really the only major prognostication other than PROMAX on the issue. But the prognostications that came from the Supreme Court in an unpublished decision premised the decision upon an agreement that the acceleration date would have been determined by the notice of default and the subsequent rescission. The enactment of NRS 107-550 subsection 3 that was enacted on October 1st of 2013 is not retroactive and it's not applicable in this case. And it doesn't serve to provide that the notice of default was in fact a retroactive rescission. The holding in Glass, and that's why it's somewhat distinctive and I want to just put some premise to this, assumed as a precatory fact, agreed to, stipulated to by the parties, that the NOD was the accelerating document, the notice of default. Because in the notice of default, they set the date for the last payment and so forth. So they made the notice of default the elective date because that notice of default already satisfied the 10 years that was an issue. But that's not what the statute says. In that case, was that – can I just ask, was that a recorded document in that case, in the Glass case? There was a recorded document, Your Honor, and there was a notice of default and then there was a subsequent rescission that was done I believe in 2011. But it was a recorded document, correct? It was, sir. Unlike in this case where clearly the matter – it's an unrecorded notice of acceleration that you're arguing triggers the ancient lien statute here. Isn't that correct? Well, it is and I think – there's great distinction for this though. If we look at – you look at 106-240 as a statute. It's in the mortgage section and it's really the linchpin of the argument. So from that point of view – and the court I don't think wrongfully decided that the deed of trust dictates the recorded deed of trust and or any recorded extensions thereof. Now, those are the two linchpins and I want to talk about that because what the statute says is the lien heretofore or hereafter created of any mortgage or deed of trust upon a real property, appearing of record – so that's the recorded notice of trustee – not otherwise satisfied and discharge of record, which is not the per se case here, shall at the expiration of 10 years after the debt secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension become wholly due. First off, there's no definition of what wholly due means and there's no case law in the state of Nevada that's determined what wholly due means. But what we do know for a certain fact is what the statute reads, plain, unambiguous meaning. In PROMAX, they decided that the statute – the Supreme Court said in the published decision that the statute was clear, unambiguous and plain. And in this statute, it says the deed of trust according to its terms. Your Honors, I postulate to you, under Section 22 of the deed of trust, which is the agreement obviously between the borrower and the lender, the borrower and the lender have two levels of notification. The first level of notification speaks very, very directly and says that the notice of default – I'm sorry – 22, it's acceleration remedies. Lender shall give notice to borrower prior to acceleration following borrower's breach of any covenant of agreement in this security agreement but not prior to acceleration under Section 18 unless applicable law provides otherwise. Section 18 is the due on sale clause, Your Honors. The notice shall specify the default, the action required to cure the default, a date not less than 30 days from the date the notice is given to borrower by which the default must be cured, and that failure to cure the default on or before the date specified in the notice may result in acceleration of some secured by the security instrument and the sale of the property. The notice shall further inform borrower of the right to reinstate after acceleration and the right to bring court action for the nonexistence of a default and so forth. That's the first level. That's a letter. That's nothing recorded. But that's between the borrower and the lender. The issue we have is this. The 106.240 provides no requirement – Which is called the – it's really just a simplification for everyone. It's known as the ancient lien statute, correct? I mean, that is what 106.240 is all about. I'm not sure anybody's actually called it the ancient lien statute other than the respondents, the appellees. But in this particular case, it is intended that if a loan is stale for 10 years and there's no collections, there's no activity on it, it's been accelerated – It clears the public land of the lien after 10 years, essentially. In a nutshell, that's what it is. Agreed. Agreed. But in this particular case, we do have the PROMAX case where the Supreme Court has opined in this particular area and didn't limit it to eliminating ancient liens. It was more along the lines if it's been accelerated and it's been accelerated for more than a 10-year period, the statute would apply, and that was under PROMAX. But the point here is there is no – if the statute had to have a notice of default to be the defining moment, the legislator would have written it into the statute, right? There is no document that says, here's how this gets done. There is no artification in the statute that says upon the notice of a default, the acceleration is keyed, if you will, or the timetable is developed. There is nothing to that effect. What it says is it's as of the deed of trust under its terms. In this particular case, the deed of trust does provide. The deed of trust of which the recorded document for edification to anybody who wants to go to the recorder's office and get a copy says that we're going to send you a notice. Not only that, this is an FHFA loan, right? It's a – I believe it's a Fannie Mae product. In this particular case, the servicing guidelines dictate that 42 to 65 days, depending on the severity of the default, whether it's medium severity and that's determined by the servicer pursuant to the servicing guidelines, but no later than 62 days from the date of default, which we know in this particular case was 3-1-0-9, they get this acceleration letter that is cited in section 22 of the deed of trust. And we assert that that is really the acceleration letter, all right? The filing of the notice of default is not. And the fact that they get an opportunity to cure in the notice of default is somewhat of a nullity unless they act – unless they avail themselves of the opportunity to cure and actually cure. It's simply an option. It is not saying that we are not decelerating or we are just starting this process over again or the letter we sent to you before had no moment, had no impact. But even if – if I can just for a minute. Even if – let's assume for the purposes of argument whether the – that clearly there was no recording of the letter and that even if we were to assume that the deed at issue did not officially require a recorded notice, which in terms of how the deed of trust is worded, even if the debt was accelerated, Fannie Mae rescinded its notice of default, did it not? And that's where you were citing the Glass case. That related to the matter of potential acceleration by being undone by rescission. That's what was addressed in the Glass case, wasn't it? It was, sir. All right. Okay. Yes. And that's why I was saying to your honors is the Glass case is an interesting point. The problem also – and there's been a fair amount of – Can we just go back to what I think Judge Bennett was pointing to? And that was why this subsequent rescission doesn't undo anything. So the first part could become irrelevant and that's an alternate basis for upholding the district court. Well, the rescission – and here's the problem with the rescissions. The rescissions as filed – and again, this is not subject to 107550 subsection 3 because it occurred substantially before and that statute was not retroactive. But the problem was is the lenders at the time were simply doing nothing more than we're not upsetting anything that happened before the NOD. We are not changing any of our rights and abilities prior to the filing of the notice of default. All we're agreeing to, and that's what's provided in the notices of rescission, is we are not going forward with the sale. And they would limit that, but they would make sure that they continued to maintain the defaulted status of the underlying loan. It was a limited rescission, if you will, intentionally drafted in that fashion. I will represent – Why doesn't it work, so to speak? I mean, it is a rescission of the notice of default, correct? But it's not a deceleration. It's a rescission of the notice of default, but it's not a deceleration by definition at all. The acceleration occurred from the letter pursuant to paragraph 22 of section 1. It didn't occur as a result of the notice of default. But didn't the Glass case indicate – I didn't mean to interrupt you. I'm sorry. I'm just trying to follow your argument. Didn't the Glass case essentially hold that the rescission resets the clock? The difficulty with the Glass case as a practitioner, Your Honor, is that in that case, the parties stipulated to the notice of default being the defining event. And that premise is fallible as it relates to what the statute provides. And the rescission of the notice of default, arguably after October 1st of 2013, whether or not it comes under the impetus of section 107555, subsection 3, is another question, obviously, not to be answered today. But the argument and the concern is, and the argument we've had, is that section 22 prevails. For example, under section 18, and not to go far afield, but under section 18 – Before you might go far afield, I just wanted to point out that you have under three minutes for rebuttal. Okay. I'm going to take this one second. Under 18, the due on sale clause – and I'm using the shorthand version. I apologize, but I assume you know what I'm referring to. If there's notice that the property has been transferred, there's an immediate acceleration that occurs pursuant to contract. Nothing gets recorded on that. But that would also be an acceleration that would trip 106240. Because if there was an acceleration of the note and the money's due, it would trip the 10-year running of that clock. And that is under section 11. And that's one of the anomalies that steps outside of the standard, if you will, notice of default and so forth. But the statute, as represented on 106240, would still be in place. There is no requirement for recording of any document that accelerates in 106240 whatsoever. It references all of the terms and conditions, however, of the deed of trust, and incorporates that in the statute. I'd like to reserve the rest of my time, unless the court has a question. You may. Good morning, Your Honors. Aaron Lancaster. May it please the court, Aaron Lancaster, on behalf of Federal National Mortgage Association. NRS 106.24 is Nevada's ancient lien statute. It clears public loan records of obsolete mortgage liens by extinguishing them 10 years after the corresponding loan becomes wholly due. According to the terms of the deed of trust and any recorded written extension. Ancient lien statutes across the country, including NRS 106.240, have obvious purposes of clearing titles of old obsolete mortgages. And counsel for Daisy admitted that, yeah, it's for stale liens, thereby making the title markable without the need for quiet title litigation. The statute is designed to create a definite point in time at which old mortgages will be deemed discharged by operational law. Nothing suggesting the statute is designed to shorten the period of time which a mortgage is enforceable. In fact, the opposite is true by the inclusion of the requirement to look at a written recorded extension of that maturity date. In this way, it serves to quiet title with respect to old mortgages without shortening the period of enforceability of mortgages before their term or maturity date has been reached. If you could answer the following question, it would be helpful to me. The letter that we don't have, the letter that was not recorded, was sent in 2009. We get a notice of rescission in 2011. The argument is that, number one, the letter doesn't need to be recorded. I'll take that for the moment as accurate for purposes of my question. The argument is, and the subsequent notice of rescission did not operate to invalidate the function of the letter accelerating.  Your Honor, the basis of acceleration related to a notice of default is contained in NRS 107.080 subsection 3. And that statute requires that, well, let me read it. About halfway through, it says, the notice of default must describe the deficiency in performance or payment and may contain a notice of intent to declare the entire unpaid balance due if acceleration is permitted by the obligation secured by the deed of trust. But this is the important part. It says, but acceleration must not occur if the deficiency in performance or payment is made good within the time specified in subsection 2. And subsection 2 provides a 35-day statutory reinstatement period. And so, clearly, Nevada statute provides that acceleration must not occur until after not only the notice of default is mailed to the borrower, but this 35-day statutory reinstatement period has lapsed. And at that point, if they have not made the deficiency whole, come to terms and paid the delinquency, at that point, then the acceleration may occur. So up until that point, acceleration is not proper. So whether there is an acceleration letter under the statute, it's not valid. And so that's how we resolve the issue that the unrecorded letter and its alleged acceleration has no impact. You know, that really was not my question. My question was, assume that the letter has the effect of accelerating the loan. Once we've assumed that, in order for your client to prevail, the notice of rescission on June 6, 2011 must counteract the effect of the letter. Your adversary says that it was not sufficient to do that. How do you respond? Well, that issue has been addressed in glass. It's been addressed in front of this court in Bank of America, NAB, SFR Investment. And this court held that under Nevada law, the rescission notice decelerated the demand for full payment. And the notice rendered NRS 106.24 inapplicable. And so we rely on what this court has previously said, as well as Nevada State Courts and Nevada Supreme Court in glass, in holding that the notice of rescission does decelerate. It does rescind the demand for full payment and the notice of default. And so how that piggybacks onto NRS 107.080 subsection 3 is related to where I was going, related to the reinstatement period and the opportunity for them to cure the deficiency under the notice of default. Both of those opinions are unpublished. Both the glass case and the opinion of this court last year, they're both unpublished opinions, correct? That's correct, Your Honor. Yeah, right. No, that was actually my question. Sorry, is there a question or is that just a statement? No, no, I don't think there's any pending questions. Thank you, Your Honor. So NRS 106.240 references deeds of trust and recorded extensions. And they said the date alone becomes wholly due for the purposes of triggering the 10-year clock, thus precluding any other documents such as unrecorded letters to borrowers from doing so. The legislature has not amended the statute since 1965. When it included additional documents of the deed of trust and the extensions as triggers, and the legislature at that time could have included unrecorded letters to the list if it intended to include those as potential triggers. But what it did in the alternative is it doubled down in effect of saying that it has to be a recorded extension. And it talked about more of a focus on the maturity date rather than any document that would shorten a maturity date. Because you got to look back, what is the purpose of the statute? The purpose of the statute is to be able to look at the record and to be able to find old stale liens, as the opposing counsel identified, that have not been active for 10 years, and then be able to have those extinguished without the need to go through litigation, discovery, and trying to find unrecorded letters if those were something that the legislature thought should be included in that. But it wasn't. And the purpose of the ancient lien statute would be frustrated if parties were required to search outside of the recorded documents to determine the trigger points, like I said, which would require litigation. Further, the notice of default in this case was recorded on April 1st, 2010, which was less than the 10 years before the foreclosure sale by Fannie Mae, which was January 10, 2020. So if this court holds that the recordation of the notice of default triggered the 10-year period under NRS 106.24, the sale was completed before that period expired. And if the court holds that the unrecorded letter allegedly mailed to the borrowers triggered the 10-year period under NRS 106.240, as we've discussed, the notice of rescission was recorded decelerating the loan. And while the last case is unpublished, it looked at the same language, the same rescission, cancellation, and withdrawal of the notice of default language. And they concluded that 106.240 was inapplicable there because of the rescission of the notice of default and deceleration of the loan. If we look at the terms of the deed of trust, paragraph 22 of the deed of trust clearly provides that the lender must give borrower notice of an opportunity to cure the default prior to acceleration. Counsel read language about that when they send a letter, it may result in acceleration. And so when we review the language of the deed of trust, then we have to marry that with NRS 107.030, subsection 3, which requires a 35-day statutory reinstatement period. And during that period, the statute clearly provides that no acceleration may occur prior to the termination of that 35-day period for them to reinstate the loan. And when we look at the term wholly due, counsel's right that you don't have case law in Nevada that clearly identifies what that is. But we provided that reference that an obligation that becomes fully due can't be satisfied or altered by partial rather than complete performance. And the Northern District of Georgia, they looked at this similar issue in Annan versus Bank of America, and they said the acceleration date and the maturity date are not synonymous. The acceleration did not trigger Georgia's anti-lien statute. And we would have the same argument here that acceleration is nowhere found in the statute. It's not addressed. There's no language that even looks at saying what happens if the maturity date is shortened. In fact, all it does is look at extension of the maturity date. And Daisy's argument that acceleration occurred prior to termination of the reinstatement is not logical because reinstatement explicitly allows the borrower to pay the default amount and not the full amount of the loan to have the loan placed back in good standing. I would note that that Georgia case with respect to the definitions of acceleration and maturity, that language is not found in this case, correct? That's correct, Your Honor. And PROMAPS does provide that the court has the equitable powers in order that it could have a tolling provision related to this. This case has been litigated or these parties have been litigating over the enforceability of the deed in trust for over five years. There's no doubt that the title owners, Daisy Trust, knew that the deed of trust was not a stalling. And the fact that nobody was looking after it, nobody was seeking to enforce it, that is certainly something that they can't argue in this case. And in PROMAPS, the court looked at that and there was arguments related to a stopper. And the court sent it back to the district court to allow them to additionally look at the issue of a stopper. So certainly equitable principles are available for the court to be able to look at this. So if the court did determine that the unrecorded letters accelerated the loan, triggered the provisions under 106.240, we would request that the court exercise those equitable powers and be able to toll that period to allow the five years of litigation to determine whether the deed of trust was actually extinguished under the HOA sale to allow us to litigate this case and allow Fannie Mae to go ahead with the foreclosure, which it did do, to be able to resolve it. Lastly, related to whether this was a statute of limitations, a statute of repose, 106.240 doesn't bar any claims from being brought. It doesn't identify whether it's a statute of repose or statute of limitations. And Daisy Trust cites a case, FDIC v. Rhodes, and it states, a statute of limitation prohibits a suit after a period of time that follows the accrual of the cause of action. In this case, we'd say if acceleration was the cause of action or the harm that triggered that event, then this would be a statute of limitations rather than a statute of repose. And further, it talked about a statute of repose has a definite time period regardless of the cause of action was discovered or recoverable injury. If it is a statute of repose, then certainly it appears that the 10-year triggering event would be upon the maturity date because there's no need to search for a discoverable injury related to when that injury would manifest itself. And with that, I'll rest on the pleadings unless any of the honors have any questions for me. Here's not. Thank you. Thank you. You have just under two minutes. Thank you, Your Honors. Just briefly, hitting the discovery issue. You know, we're starting to talk about a statute of limitations that has a discovery period associated with it. The only party that's going to have an issue or a dog in the fight, if you will, is going to be the lien holder. The lien holder is the one that sent out the notice. They have the actual notice of what the date is. PROMAX talks about whether or not the statute is limited to bona fide purchase of the value. In footnote 7, it talks about that. It talks about the amendments to the statute in 1965. And it goes on to say, at the time, legislation could have adopted language limited in the application of the statute to bona fide purchase, but it did not. From this, we conclude that the legislator did not intend for the statute to be so limited. In other words, you get the benefit of the statute regardless of your bona fide purchase of the value status. You can have knowledge of defects. You can have knowledge that there are issues, and you still get the relief provided. That is consistent with the statute of repose, not a statute of limitations. The arguments there are somewhat off in terms of what they may be. Can I follow up with one point that was just raised by Mr. Lancaster, I believe? This case was litigated for like five years in the state court system, was it not, from 2014 to 2019, in which Daisy Trust litigated a quiet title action against Fannie Mae. Is that not correct? It is, Your Honor. Ultimately, you did not prevail, and then you dismissed that action and filed the subject action. Did you make any reference or allegations as to the ancient lien statute, 106.240, in the state action? Your Honor, it wasn't ripe. The 106.240 argument wasn't ripe at the time, and it wasn't ripe until after the case was dismissed. After the five years of state litigation? It wasn't ripe. It's a 10-year statute, Your Honor, and it wasn't ripe. That's the problem. And again, it wasn't trick and device. It just wasn't ripe. And the underlying litigation went its course. We had hopes at that time of that aspect, but the 106.240 argument, again, wasn't ripe and was brought in a separate action. Thank you, Mr. Corteau. I think that— I went over? I'm sorry. No, we try to give you a little leeway in any event, always. I appreciate it, Your Honor. But we do have extensive briefing from both parties that's very helpful in this case. So I do thank you for your arguments this morning. Daisy Trust v. the Federal National Mortgage Association is submitted.
judges: McKEOWN, FLETCHER, Bennett